**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DISTRICT OF COLUMBIA**

Federal Trade Commission,

*Plaintiff*,

v.

Edwards Lifesciences Corporation,

and

JenaValve Technology, Inc.,

*Defendants*.

Case No. 1:25-cv-02569 (RC)
Judge Rudolph Contreras

**UNOPPOSED JOINT MOTION TO SEAL CONFIDENTIAL EXHIBITS AND TESTIMONY PURSUANT TO LOCAL RULE 5.1(h)**

Edwards Lifesciences Corporation and JenaValve Technology, Inc. respectfully move the Court for an order permanently sealing all or parts of 143 exhibits and demonstratives introduced at the trial or cited in either party's Proposed Findings of Fact, parts of transcripts of designated deposition testimony, and transcripts reflecting trial testimony offered during closed sessions.

As set forth below, some of the exhibits admitted at trial, some of the demonstratives used at trial, and the trial testimony offered during closed session contain confidential information, including information, testimony, and materials designated as Confidential Material pursuant to the Joint Stipulated Protective Order entered in this case. Dkt. No. 47. Many of these materials contain competitively sensitive information that would harm either, or both, Defendants if revealed publicly. The competitively sensitive materials fall into several categories: (1) nonpublic R&D plans and projects, (2) nonpublic technical information specific to Defendants' devices, (3) recent, nonpublic financial information, (4) current and future nonpublic cost and pricing information, and (5) current and forward-looking business strategy materials. Some of the materials contain (6) sensitive personal information.

The Defendants jointly file this Motion and have met and conferred with Plaintiff, who does not oppose this Motion.

## LEGAL STANDARD

To prevent a court's records from being used as "sources of business information that might harm a litigant's competitive standing," courts may seal records of court proceedings. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Courts in this Circuit analyze the following six factors in evaluating requests to seal court records:

(1) the need for public access to the documents at issue;

(2) the extent of previous public access to the documents;

(3) the fact that someone has objected to disclosure, and the identity of that person;

(4) the strength of any property and privacy interests asserted;

(5) the possibility of prejudice to those opposing disclosure; and

(6) the purposes for which the documents were introduced during the judicial proceedings.

*United States v. Hubbard*, 650 F.2d 293, 317–22 (D.C. Cir. 1980); *accord Cable News Network, Inc. v. FBI*, 384 F. Supp. 3d 19, 42 (D.D.C. 2019); *Factor2 Multimedia Sys., LLC v. TikTok Inc.*, No. 24-cv-133, 2025 LX 154747 (D.D.C. June 18, 2025) (R. Contreras). All six *Hubbard* factors are relevant, but "a strong showing on one *Hubbard* factor can outweigh several other factors." *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 11 (D.D.C. 2013).

"Though the public generally has a right to access judicial records, that right is not absolute." *TikTok Inc.*, 2025 LX 154747, at *14 (citing *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1127 (D.C. Cir. 2020)).

Relying on *Hubbard*, courts in this Circuit consistently find that sealing is appropriate to avoid disclosure of competitively sensitive information. *See, e.g., Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 671 (D.C. Cir. 2017) ("For documents containing sensitive business information and trade secrets, those factors often weigh in favor of sealing") (citation omitted); *United States v. Anthem, Inc.*, No. 16-cv-01493, 2017 WL 8893757, at *2. (D.D.C. Jan. 18, 2017) (granting motion to seal where disclosure would provide competitors with unjustified insight into Anthem's provider rates, pricing, marketing analysis, new products, and strategic plans); *United States v. Aetna Inc.*, No. 16-cv-01494, 2016 WL 8739257 (D.D.C. Dec. 4, 2016) (special master recommendation—adopted by the court—that the court grant defendants' motion to seal confidential business information in a proceeding brought to challenge a merger under the antitrust laws); *U.S. Commodity Futures Trading Comm'n v. Whitney*, 441 F. Supp. 2d 61, 72–73

(D.D.C. 2006) (granting motion to seal where disclosure would reveal "detailed discussions of [the company's] internal procedures that could potentially be used against them by a competitor"); *United States ex rel. Purcell v. MWI Corp.*, 209 F.R.D. 21, 28 (D.D.C. 2002) (permitting protection of certain "proprietary" information based on assertion that the "unrestricted release . . . would be detrimental to [the party's] competitive position") (citation omitted). Likewise, as described in greater detail below, the right to keep sensitive personal information private is well recognized in this District. *Infra* 11.

Consistent with this line of precedent, the Court has already granted the Defendants' and third parties' motions to seal portions of their pleadings in this matter in order to protect competitively sensitive information.[1] For the reasons set forth below, all information subject to this Motion warrants sealing.

**DISCUSSION**

The Defendants have conducted a thorough, document-by-document, line-by-line review of all trial exhibits and testimony and have identified compelling reasons to permanently seal those materials that contain competitively sensitive or sensitive personal information that should be shielded from public disclosure. As set forth below, the Defendants address these materials by category to aid the Court in its *Hubbard* analyses and avoid repetition. Some exhibits and testimony fall into more than one category and should be sealed for multiple reasons. The *Hubbard* factors, as applied to each of these categories, weigh in favor of sealing this sensitive information from public disclosure. **Appendix 1** to this motion identifies each exhibit, deposition designation, and the portions of the trial transcript that the Defendants move to seal and indicates the category of confidential information to be protected.

---

[1] Dkt. Nos. 47, 124, 160.

In assessing the first *Hubbard* factor, the court is to "consider the public's need to access the information that remains sealed, not the public's need for other information sought in the overall lawsuit." *Cable News Network, Inc. v. FBI*, 984 F.3d 114, 119 (D.C. Cir. 2021). Because the Defendants are submitting redacted copies of confidential exhibits and trial transcripts where possible and have worked diligently to redact and seal as little relevant information as possible, the information that the Defendants are requesting remain sealed in this case is limited, while much of the trial record remains public. For nearly all exhibits that are subject to this Motion, the Defendants exchanged proposed redactions with the Plaintiff before the exhibits were used in court and met and conferred to reach agreement on narrow redactions aimed at guarding only that information that warrants protection. As discussed in more detail in the following sections, there is no public need to access the limited information that the Defendants seek to keep fully under seal. The first factor therefore weighs in favor of sealing sensitive party information.

The second *Hubbard* factor also weighs in favor of sealing. The second *Hubbard* factor concerns whether the public had prior access to the information and to what extent. *Hubbard*, 650 F.2d at 318 ("previous access has been considered relevant to a determination whether more liberal access should be granted"); *In re Application of New York Times Co. for Access to Certain Sealed Court Records*, 585 F. Supp. 2d 83, 93 (D.D.C. 2008) (finding that when "much of the critical information is already in the public forum . . . this factor weighs in favor of unsealing the . . . materials"). Here, the public has not previously had access to the information.

The third *Hubbard* factor asks whether someone has objected to disclosure and the identity of the objector. *Hubbard*, 650 F.2d at 319. For each category of party information subject to this Motion, Defendants, whose competitively sensitive information is at issue, continue to object to its disclosure.

The fourth and fifth *Hubbard* factors are often considered together. They concern the strength of the objector's privacy interests and the possibility that disclosure will prejudice the objector. "Valid privacy and property interests are not limited to personal details, but may also include confidential business information that should be kept private for competitive business reasons." *United States v. All Assets Held at Bank Julius Baer & Co*., 520 F. Supp. 3d 71, 83 (D.D.C. 2020). There should be little doubt that Defendants have a strong interest in protecting sensitive personal information and competitively sensitive information from disclosure.

Disclosure of competitively sensitive information to competitors would harm Defendants' ability to successfully implement strategic plans, including the timely development of life-saving devices. The public also has a strong interest in keeping competitively sensitive information confidential because it prevents the transfer of such information to competitors, which would diminish competition among those competitors. As the Supreme Court observed in 1978, courts have consistently "refused to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598. Moreover, corporations and individuals alike have a strong private interest in protecting disclosure of sensitive personal information. For these reasons, courts regularly exclude the public from accessing "the records of court proceedings to protect private" interests. *MetLife*, 865 F.3d at 671 n.12 (quoting *Hubbard*, 650 F.2d at 315 & n.81).

Accordingly, the fourth and fifth factors also weigh in favor of sealing.

Finally, the sixth *Hubbard* factor concerns the purpose for which the exhibit was introduced during the trial. "[W]hen the sixth factor highlights the fact that a sealed document didn't affect a judicial decision, it can be the 'most important' element cutting against disclosure[.]" *Cable News*

*Network*, 984 F.3d at 120. Even if the information at hand in this Motion is relevant to the Court's determination, the other factors favor maintaining the materials under seal.

Ultimately, all factors weigh in favor of sealing Defendants' confidential information. Even if that were not the case, the Court need not find that all *Hubbard* factors weigh in favor of sealing. Again, "a strong showing on one *Hubbard* factor can outweigh several other factors." *In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d at 11.

Below, the Defendants describe the categories of sensitive information that was entered into evidence and why that information warrants sealing.

### I. Nonpublic R&D Plans and Projects

This category includes materials containing Defendants' strategic direction, future product pipelines, internal resource allocation, and timelines for bringing new medical devices to market. This level of detail is essential to Defendants' competitive edge, and its public dissemination would cause irreparable commercial injury by providing competitors with a roadmap to anticipated innovations, allowing them to redirect their own R&D efforts or business strategies. The D.C. Circuit, consistent with Supreme Court precedent, recognizes that "[t]he common-law right of inspection has bowed before the power of a court to insure that its records are not ... [used] as sources of business information that might harm a litigant's competitive standing." *Metlife,* 865 F.3d at 671 n.12 (quoting *Nixon*, 435 U.S. at 598). Protecting Defendants' R&D materials from public view is essential to preserve the Defendants' competitive standing and incentive to innovate. It is also consistent with the principle that courts must protect trade secrets and commercially sensitive data from unnecessary disclosure. *Hubbard*, 650 F.2d at 315. Thus, Confidential Material identified as containing nonpublic R&D plans and projects should be sealed.

## II. Nonpublic Technical Information Specific to Defendants' Devices

This category includes images, descriptions, and any other technical information related to Defendants' nonpublic, proprietary devices, including current and planned devices. Public disclosure of these documents and testimony would constitute the dissemination of trade secrets and confidential commercial information, causing irreparable competitive harm to Defendants by allowing competitors access to valuable, proprietary R&D. Competitors could use this information to evaluate Defendants' strategic priorities and target markets.

Nonpublic technical information specific to the Defendants' devices is precisely the type of information that the fourth Hubbard factor is specifically intended to protect: trade secrets and "business information that might harm a litigant's competitive standing." *Vanda Pharms., Inc. v. FDA*, 539 F. Supp. 3d 44, 55 (D.D.C. 2021) (citing *Hubbard*, 650 F.2d at 315); *see also MetLife*, 865 F.3d at 671 ("For documents containing . . . trade secrets, those [*Hubbard*] factors often weigh in favor of sealing and, as *Hubbard* itself noted, courts commonly permit redaction of that kind of information."); *Saint Alphonsus Med. Ctr.--Nampa, Inc. v. St. Luke's Health Sys., Ltd.*, No. 12-cv-00560, 2014 WL 3101716, at *6 (D. Idaho July 3, 2014) (sealing confidential business documents because "proprietary information is akin to a secret formula of ingredients for, say, a soft drink — it gives a competitive advantage to the holder of the formula, who has expended time and money to develop the formula. If the secret formula is revealed, the competitive advantage is lost").

Accordingly, the Confidential Material identified as containing nonpublic, technical information specific to Defendants' devices should be sealed.

## III. Recent Nonpublic Financial Information

This category includes recent budgets, projections, margin analyses, and any other nonpublic financial information that Defendants are currently utilizing to conduct business

operations. Documents and testimony in this category warrant sealing because they contain detailed and nonpublic sales, costs, and margin data from the past year and recent financial forecasts. Courts in this District have repeatedly found that nonpublic financial information warrants sealing. In *Anthem*, a special master found that disclosure of the defendants' financial data risked "causing Anthem competitive harm by affording its competitors unfair insight" that would give them the ability to "strategize methods to more effectively compete with Anthem." 2017 WL 8893757, at *3. *See also Aetna*, 2016 WL 8739257, at *2 (special master recommending the court grant Humana's motion to seal nonpublic financial information because "disclosure risks causing Humana serious harm by granting its competitors unfair insight into its strategic plans.").

The same concerns about competitive injury are present in this case. The financial data within the Confidential Material are fundamental to the Defendants' operations and none of the redacted information is publicly disclosed. Disclosure would provide competitors and third parties insight into Defendants' financial and commercial performance, including details regarding their margins and profitability, and could be used by competitors to obtain a competitive advantage. Competitors could also use this confidential financial data to aid their development of strategies related to sales and marketing. For example, data on revenue or margins for a particular product or region could provide a competitor the opportunity to target particular customers and markets. Such improper use of Defendants' financial data would cause Defendants irreparable harm.

Therefore, Confidential Material identified as containing recent nonpublic financial information should be sealed.

**IV. Current and Future Nonpublic Cost and Pricing Information**

This category includes current or future nonpublic detailed cost and pricing information, including methodologies for determining prices. Documents and testimony in this category

warrant sealing because they contain information as to how Defendants' price their products currently and plan to price their products in the future.

Courts have routinely found that such information is entitled to protection. For example, in *Aetna*, a court in this District granted Humana's motion to seal exhibits that contained, among other things, the parties' "non-public . . . pricing information," and "pricing strategy and cost position." 2016 WL 8739257, at *2, *4. *See also FTC v. OSF Healthcare Sys.*, No. 11-c-50344, 2012 WL 1144620, at *3 (N.D. Ill. Apr. 5, 2012) (restricting from disclosure "contract terms, contract negotiations and strategies, and pricing information" as trade secrets); *Roadrunner Intermodal Servs., LLC v. T.G.S. Transp., Inc.*, No. 17-cv-01056, 2018 WL 432654, at *3 (E.D. Cal. Jan. 16, 2018) (granting plaintiff's request to seal the rates that it charges its customers); *SMD Software, Inc. v. EMove, Inc.*, No. 08-cv-403, 2013 WL 1091054, at *3 (E.D.N.C. Mar. 15, 2013) (noting compelling reasons to seal "confidential information such as plaintiffs' pricing methods, projected costs and profit margin").

As with nonpublic financial information, disclosure of Defendants' nonpublic pricing and costs risks giving an unfair competitive advantage to competitors and causing the Defendants irreparable harm. Therefore, these materials should be sealed.

## V. Current and Forward-Looking Business Strategy Materials

This category includes materials containing Defendants' nonpublic product-related strategies and broader, business-side strategies. Such materials merit protection because they reflect highly sensitive considerations of potential transactions, strategic initiatives, and potential financing by the Defendants. These materials include sensitive commercial information that is not readily available to the public and there is no particular public interest in it. Defendants object to the disclosure because it would cause competitive harm to Defendants and hinder Defendants'

ability to implement future business strategies. Because the public's right of access does not extend to granting competitors an "unfair advantage" through the appropriation of private strategic roadmaps, the risk of competitive injury here outweighs the generalized interest in disclosure. *Anthem*, 2017 WL 8893757, at *3.

Business strategy materials are routinely protected in this District. In *Aetna*, the special master determined that all *Hubbard* factors weighed in favor of sealing documents and testimony that contained information related to current business operations and future business strategies. *Aetna Inc.*, 2016 WL 8738427, at *2. *See also Anthem*, 2017 WL 8893757, at *3 (special master recommending sealing of business planning and strategy information of various parties because there was little public need for disclosure but potential for competitive harm to the parties was significant); *Rich v. Shrader*, No. 09-cv-652, 2013 WL 6028305, at *4 (S.D. Cal. Nov. 13, 2013) (sealing documents containing "business strategies and secrets" because "[s]uch information may be utilized by business competitors seeking to gain an advantage by circumventing the time and resources necessary to develop their own business strategies and models").

Defendants' business strategy materials should be treated no differently. This information is not readily available to the public and there is no strong public interest in it. Even if there is some public interest in the information, it is *de minimis* and greatly outweighed by the harm disclosure would cause to Defendants' "ability to compete" in the industry. *Aetna*, 2016 WL 8738427, at *2. Therefore, Confidential Material identified as containing current and forward-looking business strategies should be sealed.

## VI. Sensitive Personal Information

This category includes email addresses, personal phone numbers and mailing addresses, and salary and compensation details of Defendants' employees. The Federal Rules and Local Rules

already require the redaction of certain forms of personal identifiers. *See* D.D.C. LCvR 5.4(f); Fed. R. Civ. P. 5.2(a) (requiring redaction of certain personal identification information such as dates of birth and social security numbers to protect privacy). Here, privacy concerns are particularly acute because of the sensitive nature of the parties' business.

Each of the Defendants' employees has privacy and reputational concerns which Defendants wish to protect. Although some of this information is presumably publicly accessible, the right to keep sensitive personal information private is well recognized in this District. *See, e.g.*, *Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 30 (D.D.C. 2018) (finding it "proper" to withhold "the names, telephone numbers, email addresses, work locations, and other personally identifiable information" of individuals because "individuals have a substantial privacy interest in personal information"); *Doe v. Syrian Arab Republic*, No. 18-cv-0066, 2020 WL 5422844, at *3 n.4 (D.D.C. Sept. 10, 2020) ("The Court permitted the Plaintiffs to file their motion for default judgment and the underlying exhibits under seal because they contained personally identifiable information . . . ."); *Gardner v. Saul*, No. 20-cv-02983, 2020 WL 12969217, at *1 (D.D.C. Oct. 16, 2020) ("Despite the presumption in favor of disclosure, the Federal Rules of Civil Procedure describe circumstances where filings may be redacted and where access to public filings may be limited. Parties may redact portions of certain personally identifiable information . . . . " (internal citation omitted));

Not only is compensation information irrelevant in this case, but such information may also harm Defendants' ability to negotiate with and retain employees. Public disclosure could potentially damage these relationships and may lead to loss of trust. *See, e.g.*, *Richmond v. Montegiore Med. Ctr.*, 21-Civ-8700, 2023 WL 6211978, at *8 (S.D.N.Y. Sep. 25, 2023) (sealing

individual compensation numbers and other numerical compensation information of executives due to "unique privacy concerns").

Therefore, Confidential Material identified as containing sensitive personal information should be sealed.

**CONCLUSION**

For the foregoing reasons, the Defendants respectfully request that the Court permanently seal those exhibits, demonstratives, deposition designations, and trial testimony identified in **Appendix 1** and permit Defendants to publicly file the redacted versions of those exhibits and demonstratives.

February 6, 2026

Respectfully submitted,

*<u>/s/ Ryan Shores</u>*
Ryan A. Shores (500031)
D. Bruce Hoffman (495385)
Jeremy J. Calsyn (467737)
Blair West Matthews (1049159)
Jacob M. Coate (263084)
Kelton E. Anderson (90006114) (*pro hac vice)*
CLEARY GOTTLIEB STEEN & HAMILTON LLP
2112 Pennsylvania Ave, NW
Washington, DC 20037
202-974-1702
rshores@cgsh.com
bhoffman@cgsh.com
jcalsyn@cgsh.com
jcoate@cgsh.com
keanderson@cgsh.com

Joshua Lipton (461731)
Michael J. Perry (1047965) (*pro hac vice*)
Jamie E. France (1010887) (*pro hac vice*)
Stephanie Pearl (1047293) (*pro hac vice*)
Logan Billman (1764775) (*pro hac vice*)
Connor Leydecker (90005630) (*pro hac vice*)

GIBSON, DUNN & CRUTCHER LLP
1700 M Street, NW
Washington, DC 20036
(202) 955-8226
jlipton@gibsondunn.com
mjperry@gibsondunn.com
jfrance@gibsondunn.com
spearl@gibsondunn.com
lbillman@gibsondunn.com
cleydecker@gibsondunn.com

*Counsel for Edwards Lifesciences Corporation.*

*s/ Samer Musallam*
Samer M. Musallam (pro hac vice)
Jonathan Klarfeld (D.C. Bar No. 1025315)
Michael S. McFalls (pro hac vice)
Elizabeth T. McInerney (pro hac vice)
Michael Stork (pro hac vice)
ROPES & GRAY LLP
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
(202) 508-4600
Jonathan.Klarfeld@ropesgray.com
Michael.McFalls@ropesgray.com
Samer.Musallam@ropesgray.com
Elizabeth.McInerney@ropesgray.com
Michael.Stork@ropesgray.com

Matthew L. McGinnis (pro hac vice)
Sandra H. Masselink (pro hac vice)
ROPES & GRAY LLP
800 Boylston Street
Boston, MA 02199
(617) 951-7000
Matthew.McGinnis@ropesgray.com
Sandra.Masselink@ropesgray.com

*Attorneys for Defendant JenaValve Technology Inc.*